No. 21,180.

DAVID R. NEIL, *Appellee*, v. JOHN P. STUART et al., *Appellants*
(ANDREW NEIL and LULA KEITH COOKSEY, *Appellees*).

### SYLLABUS BY THE COURT.

1. WILL—*Construction—Interest of Devisees.* The will involved herein
   devised. the testatrix's property to her husband for life and provided
   that at his death—

   "the property is to be sold and divided as follows: Among my Broth-
   ers & Sisters children and David R. Neil and Andrew Neil, also Lulu
   Keith equally."

   *Held,* that the three persons last named take equally with each of the
   nephews and nieces *per capita.*

2. SAME—*Evidence—Statements of Testatrix.* It was not error to ex-
   clude evidence of statements made by the testatrix to the scrivener,
   that she wanted each of the devisees to share equally with the others.

Appeal from Republic district court; JOHN C. HOGIN, judge.
Opinion filed January 12, 1918. Modified.

*W. D. Vance,* and *R. E. McTaggart,* both of Belleville, for
the appellants.

*N. J. Ward,* of Belleville, for the appellee.

The opinion of the court was delivered by

WEST, J.: This case involves the construction of a will; the
question being whether certain devisees shall take by families
or individually. The only error complained of, aside from the
*per stirpes* construction, is the refusal to receive the evidence
of the scrivener as to what the testatrix said her intentions
and desires were concerning the interests of the devisees.

Jennet Neil married John Neil, and in December, 1877, a
deed was made to them jointly for one tract of land now in
controversy. Her husband died in 1879, and in 1881 she
married his brother Daniel Neil, and afterwards acquired
other land in addition to what she took as survivor of her first
husband. She never had any children. Daniel's two nephews,
David R. Neil and Andrew Neil, had lived in her home in
early life, her husband having been their guardian. They
were with her in her last sickness and were friendly with her

till the end. When she died she had brothers and sisters who had children, and one sister who had none. Only one sister, Mrs. Keith, lived in Kansas, and the others had never visited Jennet, at least not for many years. Mrs. Keith had a step-daughter, Lulu Keith Cooksey. The will was executed April 4, 1905, and gave the husband, Daniel Neil, a life estate in the land. Jennet died April 30, 1905. Daniel, who took under the will, died December 19, 1912. The will is in the following words:

### "LAST WILL AND TESTAMENT

"I, Jennet Neil of Courtland, Kansas, make this my last will.

"I give devise bequeath my estate and property both real & personal as follows that is to say to my dear husband Daniel Neil during his natural life time and at his death the property is to be sold and divided as follows: Among my Brothers & Sisters children and David R. Neil and Andrew Neil, also Lula Keith equally.

"I further bequeath unto Frances Peter Wilson, Herman Henry Wilson and George McBoyle the sum of One Dollar each.

"I further bequeath the money on my notes & mortgs as follows: $500 to Daniel Neil my husband $500 to Barbara Stewart [Stuart] $500 to Mary Smith $500 to Grace Smith $500 to Isabell Keith

"In witness hereof I have signed and sealed and published and declared this instrument as my last will at Courtland, Kans., this 4th day of April, 1905.                                        JENNET NEIL.

"Subscribed to before me this 4th day of April, 1905.

(Seal)                                         J. E. TUCKER, N. P.

"My Commission expires March 3rd, 1906

"Harry Marty

"Simon J. Snider ·

    *Wits.*"

Does the will compel the construction adopted by the trial court, that the sisters' children take *per stirpes?* Was it error to reject the evidence of the testatrix's intention and desires? The case has been briefed with noteworthy ability by counsel on both sides, and each with persuasive reasoning and numerous citations seeks to substantiate his position. The rule which takes precedence over all the other rules of testamentary construction—many of them made venerable by time—is that the intention governs. When such intention appears by the use of apt language it is an end of all strife. What do these words naturally, technically, or intentionally mean?

"Among my Brothers & Sisters children and David R. Neil and Andrew Neil, also Lula Keith equally."

They must and do mean that David R., Andrew and Lula share equally with the children of the brothers and sisters, but are the children each to share equally with David and Andrew and Lula, or are all the children of each brother or sister or all the nephews and nieces together as a class thus to share? David and Andrew she knew and Lula she knew, but the children of the brothers and sisters the testatrix apparently did not know and certainly did not name. One conclusion to be drawn from the words used is that each brother or sister with children, each of the husband's nephews, and Isabelle's stepdaughter should be deemed an equal numerical divisor of the estate, the parts to equal the number of persons thus indicated. This view the trial court took.

But we still have the difficulty arising from the designation of certain children, the two nephews and one stepdaughter "among" whom the proceeds of the estate were to be "divided" and divided "equally."

Authorities may be found to uphold either the *per capita* or the *per stirpes* view. (40 Cyc. 1491-1497, and cases cited; 3 Words and Phrases, 2429-2431; Note, Ann. Cas. 1916C, 411.) But all these cases with the various textbooks strive for the same goal—the intention of the testator as expressed in the will. It would be unprofitable to array or quote decisions touching the various expressions used by testators and the meaning judicially derived therefrom, and it is sufficient to say that the majority of the court believe and hold that the most natural and the only proper construction to be given to the language now under consideration is that each nephew and niece of the testatrix was intended to share equally with the three other devisees, all to take *per capita*.

Having reached this conclusion, it follows that the rejection of the evidence of the notary public as to what the testatrix told him she wanted each of the devisees to have was not error.

From all the circumstances, Jennet Neil, in disposing of the property which came to her and her first husband jointly and that which was acquired by her and her second husband, brother of the former, had in mind the affection shown by both for their two nephews, although no blood relation to herself, and she naturally desired to take care of the children of her brothers and sisters for whom she felt a natural affection

Neil v. Stuart.

whether their parents had visited her or not, and also a near-
ness to the stepdaughter of the one sister who lived here. It
would not be deemed natural or reasonable, from any language
found in the instrument or from any circumstances shown, to
conclude that she wanted one of the nephews or nieces to have
a greater or lesser share than any other, all of whom she must
have had in mind when she directed that the proceeds of the
property were to be divided among them and the other devisees
"equally." If one sister should have five children at the death
of the testatrix, and another, one, there is nothing to indicate
that Jennet intended the one to have as much as the five. The
language and circumstances indicate that she regarded her
nephews and nieces, the one stepniece and the two nephews by
marriage, as the equal objects of her benefaction, and this con-
struction of the will is entirely reconcilable with the situation
shown and the language used, which cannot without difficulty
be given any other construction. It follows that while the rul-
ing of the court in the exclusion of evidence was correct, the
judgment as to the construction of the will was error.

The judgment is therefore modified accordingly, and the
cause remanded for further proceedings in accordance here-
with.

DAWSON, J. (dissenting) : I think the judgment of the trial
court that the children of the brothers and sisters of the testa-
trix, unnamed and unknown by her, should take *per stirpes* and
not *per capita* was correct and in harmony with well-consid-
ered precedents in analogous cases.